865 F.2d 1283
 130 L.R.R.M. (BNA) 2365, 275 U.S.App.D.C. 184
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL
3882, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
U.S. Department of Justice, Bureau of Prisons, Intervenor.
 No. 87-1723.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 12, 1988.
Decided Jan. 24, 1989.
 
 Martin R. Cohen, with whom Mark D. Roth was on the brief, for petitioner.
 William R. Tobey, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Washington, D.C., Federal Labor Relations Authority, was on the brief, for respondent. Elsa D. Newman, Attorney, Federal Labor Relations Authority, also entered an appearance for respondent.
 Frederick Page Newton, Attorney, Dept. of Justice, with whom John R. Balton, Asst. Atty. Gen., and William Kanter, Attorney, Washington, D.C., Dept. of Justice, were on the brief, for intervenor. William C. Owen, Attorney, Dept. of Justice, also entered an appearance for intervenor.
 Before EDWARDS and WILLIAMS, Circuit Judges, and JOHN W. REYNOLDS, Sr.* , District Judge.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 In the order under review, the Federal Labor Relations Authority ("FLRA" or "Authority") dismissed a complaint alleging that the Department of Justice, Bureau of Prisons ("Bureau"), had committed an unfair labor practice. The petitioner, Local 3882 of the American Federation of Government Employees, AFL-CIO ("AFGE" or "Union"), had claimed that prison officials at a federal correctional institution in Ray Brook, New York, acted unlawfully in failing to notify the Union of a meeting that was held between members of management and a prison employee to allow the employee to respond to a charge of sexual harassment. The Authority held that, because the meeting did not concern a "grievance" under section 7114(a)(2)(A) of the Federal Service Labor-Management Relations Statute ("Statute"), 5 U.S.C. Sec. 7114(a)(2)(A) (1982), no unfair labor practice had been committed. We affirm the FLRA decision and deny the petition for review.[1]I. BACKGROUND
 
 
 2
 The facts precipitating this litigation are not in dispute. On December 9, 1985, Yvon Bien-Aime, an employee at the Federal Correction Institution at Ray Brook, New York, was given written notice that the Warden proposed to suspend him for thirty days on the charge of sexually harassing a female employee. In accordance with section 7513(b) of the Statute, 5 U.S.C. Sec. 7513(b) (1982), the notice informed Bien-Aime that he had the opportunity to reply to the charges orally and in writing and was entitled to be represented by counsel or the Union when replying.[2] Joint Appendix ("J.A.") 36a. Bien-Aime retained counsel and submitted a written response to the charges on December 23, 1985. Bien-Aime's counsel also scheduled a meeting with the Warden and the prison's Superintendent of Industries and Personnel Officer, in order for Bien-Aime to reply orally. Although Bien-Aime was a member of a bargaining unit represented by Local 3882 of AFGE, neither he, nor his attorney, nor any member of prison management notified the Union of the scheduled meeting between Bien-Aime and management.
 
 
 3
 The meeting was held from 10:15 until 11:00 on the morning of January 10, 1986, in the Warden's office. Because the Union had not been given any opportunity to be represented at the meeting, no Union official was present. The Warden began the meeting by restating the charges made in the December 9 notice, after which Bien-Aime, with the assistance of counsel, presented his defense. The Warden closed the meeting by telling Bien-Aime that he understood Bien-Aime's concerns and would make a determination on the matter as soon as possible. Ray Brook's Personnel Officer took notes at the meeting, which served as the basis for the official record of the proceedings.[3]
 
 
 4
 Based on Bien-Aime's written and oral replies, the Warden decided not to suspend him, but instead issued him an official letter of reprimand on January 21, 1986. On February 12, Bien-Aime filed a grievance protesting the letter of reprimand under the negotiated grievance procedure between the Union and the Bureau. Bien-Aime used the Union as his representative in this grievance filing.
 
 
 5
 Subsequently, AFGE filed an unfair labor practice charge with the FLRA,[4] asserting that as the exclusive representative of the bargaining unit employees, it had a statutory right under section 7114(a)(2)(A) of the Statute, 5 U.S.C. Sec. 7114(a)(2)(A) (1982), to be notified of and present at the meeting between Bien-Aime and the prison Warden. Section 7114(a)(2)(A) provides:
 
 
 6
 (2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at--
 
 
 7
 (A) any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment.
 
 
 8
 For an exclusive representative to have the right to be represented at such a discussion, each of the elements set forth in the section must exist: there must be a discussion, formal in nature, between one or more agency representatives and one or more bargaining unit employees, concerning a "grievance," "personnel policy," or "other general condition of employment."
 
 
 9
 The FLRA found that the Bureau had not engaged in an unfair labor practice when it failed to notify the Union of the meeting, AFGE, Local 3882 v. U.S. Dep't of Justice, Bureau of Prisons Fed. Correction Inst. (Ray Brook, New York), 29 F.L.R.A. No. 52 (Sept. 30, 1987), because the meeting did not concern a "grievance" within the meaning of section 7114(a)(2)(A).[5] The Authority found that the "sole purpose of the meeting was to permit the employee to make an oral reply to [the] accusations," and that the Bureau had not yet made a final determination about disciplinary action before the oral reply. 29 F.L.R.A. No. 52, slip op. at 8. In other words, the Authority found that, absent a determination on discipline, no grievance could be pending during the meeting.
 
 
 10
 Under section 7103(a)(9) of the Statute, 5 U.S.C. Sec. 7103(a)(9) (1982), a "grievance" is defined as "any complaint ... by any employee concerning any matter relating to the employment of the employee." It is understood that a grievance may arise either pursuant to a statutory procedure or a contractually administered process. See National Treasury Employees Union v. FLRA, 774 F.2d 1181 (D.C.Cir.1985) ("NTEU v. FLRA "). In this case, the Authority held that "no grievance under a contractual grievance procedure was involved," 29 F.L.R.A. No. 52, slip op. at 8, so the only type of grievance that could have been at issue for Bien-Aime was one arising under a statutory provision. But the Authority found that since Bien-Aime had no "complaint" to assert at the meeting (because no disciplinary action had yet been taken), he could not have raised a "grievance" within the compass of section 7103(a)(9); therefore, the Union "did not have a right to be represented under section 7114(a)(2)(A)." Id.
 
 
 11
 Moreover, from a policy perspective, the Authority pointed out that the intent of section 7114(a)(2)(A) was "to provide the union with an opportunity to safeguard its interests and the interests of employees in the bargaining unit." Id. at 6. On the facts of this case, the Authority could not discern "how the interests of the unit would have been furthered by the union's presence at the meeting at issue." Id. at 9. Nothing in the record indicated that the employer's representatives intended to discuss any general views on sexual harassment during the meeting. Nor did the record indicate any likelihood of intimidation or coercion of the employee, since Bien-Aime had exercised his right under section 7513(b) to be represented by counsel. The FLRA therefore saw no reason for the Union to be at the meeting, either on its own or on the employee's behalf. Id.
 
 
 12
 The FLRA thus concluded that the reply meeting "did not concern a grievance, and there [was] no allegation that the meeting concerned any personnel policy or practices or other general condition of employment." Id. at 10. The elements of section 7114(a)(2)(A) necessary to constitute an unfair labor practice were not present, and therefore no unfair labor practice had occurred. Id.
 
 II. ANALYSIS
 A. The Claim Under Section 7121(b)(3)
 
 13
 We first dispose of petitioner's claim on appeal that the agency violated section 7121(b)(3) of the Statute, 5 U.S.C. Sec. 7121(b)(3) (1982). This section provides that
 
 
 14
 (b) Any negotiated grievance procedure ... shall--....
 
 
 15
 (3) include procedures that--
 
 
 16
 (A) ensure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;
 
 
 17
 (B) assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and(C) provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency.
 
 
 18
 On appeal to this court, the Union has argued that the meeting with Bien-Aime--which was concededly held pursuant to section 7513(b)--was also recognized by the parties as the first step of the grievance procedure under their negotiated collective bargaining agreement. Pursuant to this claim, the Union now asserts that it was entitled under section 7121(b)(3) to be present at the oral reply meeting.
 
 
 19
 If the foregoing claim were properly before this court, we would be faced with the very difficult task of attempting to reconcile the requirements and protections of sections 7121(b)(3), 7114(a)(2)(A) and 7513(b). The record indicates, however, that the petitioner did not raise such a claim before the Authority. Examination of the entire Administrative Record, which appears in a Supplemental Memorandum filed after oral argument, reveals that no section 7121(b)(3) violation was alleged in either the charges or the complaint before the FLRA.[6] This argument was made for the first time in the petitioner's brief seeking review of the FLRA decision before this court.
 
 
 20
 In fact, the Union never filed a brief before the Authority, relying instead completely upon the FLRA General Counsel to prosecute the case. In the FLRA proceedings, the General Counsel never asserted that the oral reply meeting should be considered the first step of the parties' negotiated grievance procedure. The Stipulation of Facts, Supplemental Memorandum ("S.M.") 76-83, nowhere mentioned section 7121(b)(3), but rather spoke of the Union as the authorized agent "for purposes of representation at formal discussions under 5 USC 7114(a)(2)(A)," S.M. 77.[7] The Complaint and Notice of Hearing, J.A. 29a, and the General Counsel Brief, S.M. 17-30, especially at 17, 20-21, 30, both alleged only a violation of section 7114(a)(2)(A). Furthermore, the primary thrust of the General Counsel's argument was that, despite the fact that Bien-Aime's case was not a grievance pursuant to the negotiated procedure, it could nevertheless be considered a "formal discussion" of a "grievance," under section 7114(a)(2)(A), as "grievance" had been defined by section 7103(a)(9) and interpreted in NTEU v. FLRA.[8]
 
 
 21
 Petitioner asserts, in a Memorandum filed subsequent to oral argument, that there was no need for a section 7121(b)(3) violation to have been alleged in the complaint because section 7114(a)(2)(A) speaks of formal discussions "concerning any grievance." Thus, they reason, section 7114(a)(2)(A) incorporates any section 7121(b)(3) claims. This argument makes no sense in the context of this litigation: for one thing, the General Counsel argued that section 7114(a)(2)(A) should apply despite the fact that Bien-Aime's case was not a grievance under the parties' agreement, S.M. 28-29; for another thing, the Authority made an explicit finding that "no grievance under a contractual grievance procedure was involved." 29 F.L.R.A. No. 52, slip op. at 8. Even if the Union's argument could be viewed as a challenge to this latter finding, we can discern no basis upon which to overturn the Authority on this point.
 
 
 22
 In short, the Union's belated assertion of a claim under section 7121(b)(3) is one that cannot be considered on this record. As was made clear in Equal Employment Opportunity Comm'n v. FLRA, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986) (writ of certiorari dismissed because federal courts have no jurisdiction to consider issues not raised before the Authority), "extraordinary circumstances" must exist in order to excuse a party's failure to raise an issue before the FLRA. 476 U.S. at 24, 106 S.Ct. at 1681. Petitioner does not even allege an extraordinary circumstance. Because the section 7121(b)(3) argument was not made before the FLRA, we will not entertain it at this stage of the litigation.
 
 B. The Claims Under Section 7114(a)(2)(A)
 
 23
 On the facts of this case, the Authority did not err in finding that management's meeting with the employee and his attorney did not involve a "grievance." Under the plain language of section 7103(a)(9) of the Statute, a "grievance" must involve a complaint by an employee. Prior to the meeting at issue, the employee had not initiated any complaint; he filed a grievance against his employer only after the Warden had decided to formally reprimand him. Nor did the meeting concern an adverse decision affecting his employment, as was the case in NTEU v. FLRA, in which we held that an employee's appeal of an improper dismissal "meets the statutory definition of grievance as an employee 'complaint' concerning a 'matter relating to [his] employment,' " 774 F.2d at 1186. Indeed, at the oral reply stage, the employee was seeking to avoid such an adverse decision.
 
 
 24
 The Union claims that the mere threat of a suspension rendered Bien-Aime an "aggrieved" employee at the meeting, such that he had a "complaint" cognizable under the Statute. This is not an implausible argument, but it cannot withstand scrutiny on the facts of this case. The employer's threat of suspension arose in connection with a notice under section 7513(b) giving the employee an opportunity to respond to charges that might result in disciplinary action. In other words, the notice suggested that the employee might be suspended if the charges against him were shown to be true. The meeting was scheduled to give Bien-Aime a chance to explain his side of the story (not to discipline him), and to allow the employer to gather further information that might be relevant to any decision to discipline. Since the employer had taken no action against Bien-Aime before or during the meeting, there was nothing for the employee to "grieve" during the meeting.
 
 
 25
 Finally, it is conceded that the employee did not request Union representation at the meeting pursuant to section 7114(a)(2)(B). Under this provision, which embraces the so-called Weingarten rule, see NLRB v. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), a union has a right to be present at a meeting when an employee "reasonably believes the investigation will result in disciplinary action," and "where the employee requests [union] representation." Id. at 257, 95 S.Ct. at 961. In this case, it is undisputed that the employee did not request that the Union be present as required by the second part of the rule.
 
 
 26
 The real issue in this case is whether the Union had some independent right to be present at the management/employee meeting when a charge against the employee was being discussed. In deciding this issue, the following facts are critical and determinative: the meeting at issue arose under section 7513(b); the employee did not request Union representation during the meeting; the meeting did not involve a matter covered by section 7114(a)(2)(A); and the Authority found that the meeting did not involve an application of the parties' contract grievance procedure (which might have required the invocation of section 7121(b)(3)). In light of this record, we can discern no legal basis for the Union's claim of a right to be present at the meeting.III. CONCLUSION
 
 
 27
 The only matter properly before this court is whether the Bureau violated section 7114(a)(2)(A) when it failed to notify the Union of the oral reply meeting with the employee and his attorney. Because we affirm the FLRA finding that this meeting did not concern a "grievance" within the meaning of section 7114(a)(2)(A), that section is inapplicable. On the facts of this case, the Union had no statutory right to be represented at the meeting and the Bureau did not commit an unfair labor practice under section 7116(a)(8). Accordingly, the petition for review is denied.
 
 
 28
 So ordered.
 
 
 
 *
 Of the United States District Court for the Eastern District of Wisconsin, sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 We decline to consider the Union's claim that the disputed meeting should be viewed as a first step in the negotiated grievance procedure under the parties' collective bargaining agreement, because we find that the petitioner advanced no such claim before the FLRA
 
 
 [2]
 Section 7513(b) provides that an "employee against whom an action is proposed is entitled to ... a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;" to "be represented by an attorney or other representative;" and to "a written decision and the specific reasons therefor at the earliest practicable date."
 
 
 [3]
 The parties stipulated to the accuracy of this record
 
 
 [4]
 Under 5 U.S.C. Sec. 7116(a)(8) (1982), it is an unfair labor practice for an agency to "fail or refuse to comply with any provision of this chapter." AFGE's contention is that the Bureau of Prisons committed an unfair labor practice when it failed to comply with section 7114(a)(2)(A)
 
 
 [5]
 Finding no "grievance," and since no other "condition of employment" was at issue, it was unnecessary for the FLRA to consider the rest of the statutory requirements, such as that of a "formal" discussion
 
 
 [6]
 Moreover, if the Union truly believed that the meeting involved a "grievance" under the parties' contract, it is curious (albeit not dispositive) that it raised no objection before the FLRA to the employee's invocation of his section 7513(b) right to be represented by counsel at the meeting. Normally, outside counsel does not have a right to represent a unit employee in the processing of a "grievance" under a collective bargaining agreement. Section 7121 provides only for an employee's right to present a grievance on his or her own behalf, 5 U.S.C. Sec. 7121(b)(3)(B)
 
 
 [7]
 The Stipulation of Facts does mention section 7121(d), S.M. 81, an element of section 7121 regulating the circumstances under which an employee could elect either the statutory or negotiated grievance procedure, but the reference is made in order to make clear that this section was inapplicable to this case
 
 
 [8]
 NTEU v. FLRA held that a "grievance" can encompass a statutory appeal of a management decision as well as a contractual grievance procedure. 774 F.2d at 1185-89