DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE, WESTERN REGION, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 87–7425.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1988.

Decided July 11, 1989.

Howard S. Scher, Asst. U.S. Atty., Dept. of Justice, Appellate Staff Civ. Div., Washington, D.C., for petitioner.

Elsa D. Newman, Federal Labor Relations Authority, Washington, D.C., for respondent.

Judith D. Galat and Mark D. Roth, American Federation of Government Employees, AFL–CIO, Washington, D.C., for amicus.

Before CHOY, CANBY and TROTT, Circuit Judges.

CANBY, Circuit Judge:

The United States Department of Agriculture, Food and Nutrition Service (the Agency) seeks review of a ruling by the Federal Labor Relations Authority (the Authority) that a federal agency head cannot review and disapprove provisions of a collective bargaining agreement concluded pursuant to an interest arbitration award. We deny the petition for review and enforce the Authority's order.

## I. FACTS

In 1983, the National Treasury Employees Union (the Union), exclusive representative of the Western Region Food and Nutrition Service employees, entered into negotiations with the Agency for a master collective bargaining agreement. An impasse was reached on certain issues. The parties turned to the Federal Mediation and Conciliation Service (FMCS) under Section 7119(a) of the Federal Service Labor–Management Relations Act, as amended.[1]

---

1. 5 U.S.C. §§ 7101–7135 (1982) (the Act). All references to Sections in this opinion refer to sections of the Act unless otherwise indicated.

The assistance of the FMCS did not resolve all issues; consequently, the Union sought the assistance of the Federal Service Impasses Panel (the Panel). The Union first submitted a request for Panel approval of binding arbitration under Section 7119(b)(2). The Agency objected to this request because it was not submitted by both parties, as required under the terms of the Act. While a decision on the objection was pending, the Union wrote to the Panel asking that its earlier request be considered a unilateral request for the Panel's assistance under 5 C.F.R. § 2471.3(a) (1988), pursuant to Section 7119(b)(1).[2] The Panel responded to this request by recommending that the parties submit the dispute to an arbitrator of their choice.[3]

When the parties accepted the Panel's recommendation and selected an outside arbitrator, the Panel closed the case. The arbitrator issued his decision and interest arbitration award on April 17, 1985.[4] In addition to imposing substantive provisions, the arbitrator ordered that the following provision be inserted in the collective bargaining agreement:

This Agreement shall become effective on the date it is approved by the USDA Director of Personnel or his designee, or thirty (30) days after signature by the Chief Negotiators for both Parties if it is neither approved nor disapproved by the USDA Director of Personnel.

Thereafter, the entire collective bargaining agreement, including provisions freely agreed to by the parties and those issued by the arbitrator, was submitted to the Agency for agency head review under Section 7114(c).[5] On June 10, 1985, the Agency head approved portions of the agreement, but disapproved others, declaring the provisions resulting from the interest arbitration award nonnegotiable.

The Union, in accordance with Section 7117(c), filed a negotiability appeal with the Authority to challenge the Agency head's disapproval of certain provisions.[6] Two years later, the Authority dismissed the appeal, stating "the declaration that the

2. Section 7119(b)(1), (2) provides:
    (b) If voluntary arrangements, including the services of the Federal Mediation and Conciliation Service or any other third-party mediation, fail to resolve a negotiation impasse—
    (1) *either party* may request the Federal Service Impasses Panel to consider the matter, or
    (2) *the parties* may agree to adopt a procedure for binding arbitration of the negotiation impasse, but only if the procedure is approved by the Panel.
    (emphasis added).

3. The Panel's letter, dated May 18, 1984, reads:
    After due consideration of the Union's request for assistance in the above-referenced case, the Panel *recommends,* in accordance with section 2741.6(a)(2) of its regulations, that the parties submit this dispute to an arbitrator of their choice.
    Under this procedure, the arbitrator will have the authority to mediate with respect to all the issues. Should any issues not be resolved during the mediation stage, the arbitrator may dispose of them by (1) issuing a binding decision resolving some or all of the issues and (2) declining to hear some or all of the issues until such time as any threshold negotiability issues are resolved in the appropriate forum.
    It is further *recommended* that the costs of the proceeding, including the arbitrator's fees, be shared by the parties. If the parties need

assistance in choosing an arbitrator, they should contact the undersigned for this purpose.
    *By direction of the Panel.*
    (emphasis added).

4. "Interest" arbitration is used to resolve a bargaining impasse; an interest arbitrator is authorized to formulate and impose actual employment terms. "Grievance" or "rights" arbitration, on the other hand, involves only the interpretation and application of express terms of an existing contract. *See Department of Defense Dependents Schools v. FLRA,* 852 F.2d 779, 783 & n. 7 (4th Cir.1988). This opinion considers only the review of *interest* arbitration awards.

5. Under Section 7114(c), an "agreement" between any agency and an exclusive representative is subject to agency head approval. The agency head has 30 days to determine whether the agreement is in conformity with provisions of the Act as well as other applicable laws, rules, or regulations. If the agency head does not approve or disapprove the agreement within 30 days, the agreement takes effect and is binding on the agency.

6. Section 7117(c), in relevant part, permits an exclusive representative to appeal to the Authority an allegation by the agency involved in collective bargaining that the duty to bargain in good faith does not extend to a particular matter.

provisions were outside the duty to bargain did not serve as an allegation of nonnegotiability from which the Union could file a petition for review." The Authority reasoned that Section 7114(c) did not give the Agency head authority to review provisions directed to be included in the collective bargaining agreement as the result of the interest arbitration award, and that filing exceptions under Section 7122 was the appropriate means for challenging the award. Neither party filed exceptions to the arbitration award pursuant to Section 7122.[7]

As a result of the Authority's decision, the interest arbitrator's award, including those provisions rejected by the Agency head, was reinstated *in toto*.

## II. STANDING

■ Before we address the merits of the appeal, we must first determine whether we have jurisdiction. Jurisdiction depends on whether the Agency has standing to appeal the Authority's order. Standing is a question of law reviewed *de novo*. *Bruce v. United States*, 759 F.2d 755, 758 (9th Cir.1985); *EMI Ltd. v. Bennett*, 738 F.2d 994, 996 (9th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984).

■ The Authority entered its final order on July 16, 1987. The Agency filed its petition for review on September 10, 1987. 5 U.S.C. § 7123(a) provides that "[a]ny person aggrieved" by a final order of the Authority may, within sixty days of the Authority's order, institute an action for judicial review of that order in an appropriate United States court of appeals. The jurisdictional problem arises from the fact that the Authority dismissed the Union's appeal, even though the ruling was actually favorable to the Union. The Authority contends that this court lacks jurisdiction over the petition for review because the Agency is not a "person aggrieved" by the Authority's order and therefore does not have standing to sue under Section 7123(a).

There is no definition of "person aggrieved" in Section 7123 and no case law directly on point in this circuit. However, Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f) (1982), contains similar language. Standing to appeal an administrative order as a "person aggrieved" under Section 10(f) "arises if there is an adverse effect in fact, and does not ... require an injury cognizable at law or equity." *Oil, Chemical & Atomic Workers Local Union No. 6–418 v. NLRB*, 694 F.2d 1289, 1294 (D.C.Cir.1982) (citation omitted). This "broad standard of aggrievement," *id.* at 1295, was applied in the context of Section 7123 in *American Federation of Gov't Employees v. FLRA*, 849 F.2d 648 (D.C.Cir. 1988) (per curiam). There, the D.C. Circuit dismissed a petition for review of an Authority order for lack of jurisdiction. The court held that the petitioner and intervenor had failed to show that the order "required [them] to engage in any affirmative act" or "caused [them] any direct injury," and accordingly ruled that petitioner and intervenor were not "persons aggrieved" within the meaning of Section 7123(a). *Id.*

At first glance, it may seem that the Authority's dismissal of *the Union's* negotiability petition, on the ground that the petition was not properly before it, did not "aggrieve" *the Agency*. However, the Authority based its dismissal on a finding that the Agency head was not authorized to review the award granted by the interest arbitrator. The effect of the dismissal was therefore to reinstate the entire interest arbitration award, despite the Agency head's objections. Undeniably, this dismissal directly and adversely affected the Agency by denying the validity of the Agency head's action. The nullification of the Agency head's finding of nonnegotiability satisfies the direct injury requirement. The Agency therefore qualifies as a "person aggrieved" and we have jurisdiction to consider whether the Authority's dismissal

---

7. Section 7122 permits either party to an arbitration to file exceptions to the arbitrator's award with the FLRA on the ground that "the award is deficient ... (1) because it is contrary to any law, rule, or regulation; or (2) on other grounds similar to those applied by Federal courts in private sector labor-management relations." If no exception to an arbitration award is taken within 30 days, the award becomes final and binding.

of the Union's negotiability appeal was proper. *See Panama Canal Comm'n v. FLRA*, 867 F.2d 905, 908–09 n. 4 (5th Cir. 1989) (summarily concluding that agency is an aggrieved party under Section 7123 in case challenging identical ruling by Authority).

## III.  AVAILABILITY OF REVIEW

■ The Authority contends that the issue of whether an agency head can review an award granted by an interest arbitrator is raised for the first time on appeal, and that, therefore, the issue is not properly before this court. Section 7123(c) limits judicial review by providing that when an aggrieved party seeks review of a final order of the Authority, " '[n]o objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances.' " *E.E.O.C. v. FLRA*, 476 U.S. 19, 23, 106 S.Ct. 1678, 1680, 90 L.Ed.2d 19 (1986) (quoting 5 U.S.C. § 7123(c)). The "plain language [of Section 7123(c)] evinces an intent that the FLRA shall pass upon issues arising under the Act, thereby bringing its expertise to bear on the resolution of those issues." *Id.*

In the case at hand, several factors persuade us that judicial review is warranted. First, the arbitrator believed that his award would be subject to agency head review, as evidenced by the provision in the arbitrator's award relating to the effective date of the agreement. Second, the Union's negotiability appeal was not based on an alleged lack of authority by the Agency head to review the provisions at issue, but rather upon the traditional charge that the Agency head erred in determining that the provisions at issue were nonnegotiable. The Authority itself raised the issue of improper agency head review *only* at the time of the order dismissing the Union's petition. Consequently, the Agency reasonably did not expect to argue the issue in a negotiability appeal. Third, because the Authority raised the issue, the benefit of giving the Authority the opportunity to bring its expertise to bear on the issue of improper agency head review was not lost. The

"extraordinary circumstances" requirement of Section 7123(c) is satisfied and the issue is properly before us.

## IV.  STANDARD OF REVIEW

■ Under Section 7123(c) of the Act, judicial review of Authority orders shall be conducted in accordance with 5 U.S.C. § 706. *INS v. FLRA*, 855 F.2d 1454, 1457–58 (9th Cir.1988). Agency action should be set aside only "if the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Id.* at 1458 (quoting 5 U.S.C. § 706(2)(a)). The Authority enjoys considerable deference when it exercises its special function of applying general provisions of the Act to complexities of federal labor relations. *American Federation of Gov't Employees, Local 2986 v. FLRA*, 775 F.2d 1022, 1025 (9th Cir.1985). To be entitled to deference, however, the Authority's legal construction of the Act must be reasonable and supportable. *Id.; INS v. FLRA*, 855 F.2d at 1458.

> [C]ourts should not allow this deferential standard 'to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.' ... Thus, while we will uphold the Authority's reasonable and supportable construction of the Act, we will not rubber-stamp the Authority's decision if it is inconsistent with the statutory mandate or if it frustrates the congressional policy underlying the statute.

*INS v. FLRA*, 855 F.2d at 1458 (quoting *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983)).

## V.  THE MERITS

■ The procedure for review of collective bargaining agreements between an agency and the exclusive representative of its employees differs from the procedure followed for review of interest arbitration awards between the same parties. Under Section 7114(c), an agency head is authorized to review the provisions of a collective bargaining agreement for legal suffi-

ciency, including any provisions imposed by the Panel. *See Interpretation and Guidance*, 15 FLRA 564 (1984), *aff'd sub nom., American Federation of Gov't Employees, AFL–CIO v. FLRA*, 778 F.2d 850, 857 (D.C.Cir.1985). Review of any ensuing agency head disapproval may be sought either through the negotiability procedures of Section 7117 or the unfair labor practice procedures of Sections 7116 and 7118. Judicial review may then be available under Section 7123.

In contrast, when the parties agree to interest arbitration, the arbitration awards which result in provisions of a collective bargaining agreement are *not* subject to agency head review. The appropriate mechanism for challenging the propriety of such an interest arbitration award, including arbitration awards rendered pursuant to the parties' agreement to arbitrate under Section 7119(b)(2), is generally to file an exception to the award with the Authority pursuant to Section 7122. *See, e.g., Patent and Trademark Office and Patent Office Professional Ass'n*, 22 FLRA 7 (1986); *United States Air Force, Air Force Logistics Command, Wright–Patterson Air Force Base, Ohio*, 15 FLRA 151, 152 (1984), *aff'd sub nom. Department of the Air Force v. FLRA*, 775 F.2d 727, 734 (6th Cir.1985). The Authority then reviews the award for legal sufficiency. If no exceptions are filed within thirty days from the date the award is granted, the interest arbitration award becomes final and binding. 5 U.S.C. § 7122(b).

The question to be decided here is whether an agency head may review provisions included in a collective bargaining agreement *as a result of an award by an interest arbitrator who was selected pursuant to the Panel's recommendation to seek arbitration following a request for Panel assistance by a single party under Section 7119(b)(1).* We must determine whether the arbitration award in this case should be reviewed under Section 7122, like interest arbitration awards generally, or whether it should be subject to Section 7114(c) agency head review, like provisions of collective bargaining agreements which

are freely negotiated or imposed by the Panel.

The Agency submits that the plain language of Section 7114(c) allows agency heads to review all collective bargaining agreements. In the Agency's view, there should be no distinction between full Panel decisions and interest arbitration awards arrived at as a result of the Panel's Section 7119(b)(1) assistance. Accordingly, the Agency argues that both types of decisions are subject to agency head review under Section 7114(c).

The Authority, on the other hand, submits that the award imposed was reviewable only by the filing of timely exceptions under Section 7122. In its decision below, the Authority relied on *Department of Defense Dependents Schools (Alexandria, Virginia)*, 27 FLRA 586 (1987). In that case, the union filed a request with the Panel to consider a negotiation impasse. The Panel in turn referred the matter to a single member of the Panel for mediation-arbitration. An interest arbitration award was issued. The Authority found that Section 7114(c) does not empower agency heads to review provisions that are directed to be included in an agreement as a result of an interest arbitration award pursuant to Section 7119(b)(1) when a member of the Panel serves as mediator/arbitrator. Rather, resort to Section 7122 was necessary. In its brief, the Authority contended that there is no basis for distinguishing between interest arbitration awards of individual Panel members appointed as arbitrators and the awards of outside arbitrators rendered after a parties' request for the Panel's Section 7119(b)(1) assistance.

The decision relied on by the Authority was, however, vacated and remanded on review in the Fourth Circuit. *Department of Defense Dependents Schools v. FLRA*, 852 F.2d 779 (4th Cir.1988) (*DODDS*). The Fourth Circuit held that the decision of the Panel member mediator-arbitrator, as the Panel's "designee", is not distinguishable from a decision of the Panel itself, and thus is subject to Section 7114(c) review. *Id.* at 784. The court also stated that "[n]othing in the [Act], ... gives the Impasses Panel

the authority to impose without consent upon an agency head final and binding arbitration not subject to agency head review." *Id.* at 785. The court went on to hold that the decision of the Panel's designee *in that case* did "not amount to binding arbitration agreed upon by the parties and subject to review under § 7122." *Id.* at 784.

After the *DODDS* decision was filed, the Authority altered its argument on appeal, contending that "where the agency has agreed to interest arbitration, as occurred here, the agency is precluded from subsequently reviewing and disapproving terms imposed by the resulting arbitration award." We find this reasoning persuasive and reach the result urged by the Authority.

The *DODDS* court noted the options available to the agency head in the event of a negotiation impasse and the consequences of each option:

> [W]hen an agency head agrees to arbitration under § 7119(b)(2), he forfeits his right to agency head review under § 7114(c), and he also forfeits his right to ordinary judicial review of the decision of the FLRA. If the agency head does not agree to arbitration under § 7119(b)(2), either he or the union may request the Impasses Panel to consider the matter under § 7119(b)(1). In that event, the Panel, skipping intermediate steps, may take whatever action is necessary to resolve the impasse under § 7119(c)(5)(B)(iii), even to imposing contract terms. In this event, the agency head does not forfeit his right to approve or disapprove the agreement under § 7114(c)....

*Id.* at 785. Therefore, the key issue in determining whether the agency head forfeits his right of approval or disapproval is *whether the agency head agreed* to binding arbitration. *See id.* *See also Panama Canal Comm'n v. FLRA,* 867 F.2d 905, 908 (5th Cir.1989). In this case, unlike *DODDS,* we are convinced that he did.

Parties may agree to binding interest arbitration under Section 7119(b)(2) as an alternative to employing the services of the Panel, so long as the arbitration procedure is approved by the Panel. In that event, the agency head has no right of disapproval of contract terms imposed by the arbitrator. When one party requests the services of the Panel under Section 7119(b)(1), one of the services of the Panel may be to suggest that the parties *agree* to binding interest arbitration. If both parties then agree to arbitrate, they have simply moved the process back into Section 7119(b)(2). It remains only for the Panel to approve the procedure agreed upon by the parties. That is what happened in this case.

When the Union requested the assistance of the Impasses Panel, the Panel replied to the Union and the Agency that "the Panel *recommends,* in accordance with section 2741.6(a)(2) of its regulations, that *the parties submit* this dispute to an arbitrator of their choice." (Emphasis added). About two months later, the Panel wrote the parties that it "has been administratively advised that the parties have accepted the Panel's recommendation that the dispute be submitted to an arbitrator for a final and binding decision." It appears, therefore, that the Agency agreed to take this case to arbitration. It may have been under pressure to agree, as the Agency's counsel contended at oral argument, but it was not forced to accept the recommendation of the Panel. Having agreed, it should be in no different position than in any other arbitration proceeding agreed upon pursuant to Section 7119(b)(2).

The regulations of the Authority bear out this view. In recommending that the parties agree to arbitrate, the Panel cited 5 C.F.R. § 2471.6(a)(2) (1988). That regulation provides that when the Panel receives a request for assistance, it may "[r]ecommend to the parties procedures, including but not limited to arbitration, for the resolution of the impasse...." *Id.* Then, if such "intermediate steps," see *DODDS,* 852 F.2d at 785, are unavailing, the regulations provide ultimate weapons to the Authority:

> If the parties do not arrive at a settlement as a result of or during actions taken under §§ 2471.6(a)(2), [or other sec-

tions], the Panel may take whatever action is necessary and not inconsistent with 5 U.S.C. chapter 71 to resolve the impasse, including but not limited to, ... ordering binding arbitration conducted according to whatever procedure the Panel deems suitable, and rendering a binding decision.

5 C.F.R. § 2471.11(a) (1988). Thus if an agency head refuses to *agree* to binding arbitration under Section 2471.6(a)(2) of the regulations, he may be *ordered* into binding arbitration under Section 2471.11(a). In the latter case, he retains his right to approve or disapprove the agreement. *DODDS*, 852 F.2d at 785.

In this case, the Agency head or his designee *agreed* to binding arbitration under Section 2471.6(a)(2). He therefore forfeited his right to approve or disapprove the contract terms.

The Authority's position is reasonable, supportable and consistent with the Act. The petition for review is DENIED.