**DEPARTMENT OF DEFENSE, OFFICE OF DEPENDENTS SCHOOLS, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 87–3642.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1989.

Decided July 13, 1989.

Howard Stanley Scher (William Kanter, Civ. Div., Dept. of Justice, John R. Bolton, Asst. Atty. Gen., Washington, D.C., William C. Owen, Labor Management Relations Justice Management Div., on brief) for petitioner.

William Reed Tobey (William E. Persina, Acting Sol., Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, Washington, D.C., on brief), for respondent.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and Richard L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

PHILLIPS, Circuit Judge:

The Department of Defense, Office of Dependent Schools (DODDS) appeals a final order of the Federal Labor Relations Authority (FLRA), dismissing a negotiability appeal by an employees' union on the grounds that because the agency head of DODDS had no authority to disapprove on nonnegotiability grounds the terms of a nonvoluntarily arbitrated collective bargaining agreement, there was no basis for the union's attempted negotiability appeal. Because we disagree with and reject the legal premise for the FLRA's dismissal order, we reverse the order and remand for further proceedings.

## I

In December 1982 contract negotiations began between DODDS, which operates schools in 20 countries for the education of minor dependents of Department of Defense employees stationed overseas, and the Overseas Education Association (the union), which represents educators in three of the five DODDS regions. The present dispute arises out of a subsequent impasse in those negotiations. Title VII of the Civil Service Reform Act of 1978 (the Act), 5 U.S.C. § 7101 *et seq.*, governs federal sector labor relations and provides for a Federal Services Impasse Panel (Panel) to help resolve such impasses between federal agencies and unions. 5 U.S.C. § 7119. When the union in the present case requested the Panel's assistance upon impasse, the Panel first directed the parties to resume negotiations under the guidance of the Federal Mediation and Conciliation Service. These negotiations also completed without the parties reaching agreement. The Panel then directed the parties to submit their dispute to an arbitrator of their choice, requiring the arbitrator first to attempt to mediate all outstanding issues and then, if any issues remained, to dispose of them by final decision. The arbitrator rendered his decision in April 1985. The parties executed the agreement in June 1985.

DODDS filed exceptions to the arbitrator's award in May 1985, and in July 1985 the DODDS agency head also issued his disapproval of basically the same provisions, maintaining that they were nonnegotiable. In August 1985, the union filed a negotiability appeal. On September 4, 1987, the FLRA issued a decision that largely resolved the exceptions in DODDS' favor, and at the same time it dismissed the union's appeal, holding that the Act does not empower agency heads to review provisions included in an agreement as a result of an interest arbitration award.

DODDS, not the union, now appeals the latter decision. The FLRA has moved to dismiss the appeal, contending that we do not have jurisdiction to review its dismissal of the union's negotiability appeal because DODDS is not, as required, a person "aggrieved" by that order. 5 U.S.C. § 7123(a).

## II

The FLRA argues that DODDS lacks standing under 5 U.S.C. § 7123(a) to appeal. Section 7123 provides that only a party "aggrieved by any final order of the Authority" can appeal, and the FLRA decision below dismissed the *union*'s negotiability appeal as not properly before it. Therefore, the FLRA maintains, DODDS is not "aggrieved," since it has not "been required to engage in any affirmative act nor has the FLRA's order caused any direct injury to the agenc[y]." *AFGE v. FLRA*, 849 F.2d 648, 648 (D.C.Cir.1988) (dismissing the case).

If the question before us were only the propriety *vel non* of the FLRA's dismissal of the union's negotiability appeal, DODDS might well lack standing to appeal. But necessarily at issue is the dispositive holding upon which the dismissal was premised: that the agency head had no power to review the interest arbitrator's decision, that lacking this power the agency head could not assert that the matter was nonnegotiable, so that the union had nothing to appeal.

In the appropriate practical sense, DODDS is aggrieved by this decision. If DODDS is correct in its view of the agency head's power of review here, that power has been held for naught in an authoritative decision of the FLRA. If DODDS is denied standing to challenge that decision, it would hereafter be able to seek judicial review of comparable rejections of its allegations of nonnegotiability only when an unfair labor practice claim was decided against it for failure to implement contested contract terms. 5 U.S.C. § 7116. Only after this lengthy process of review were completed could DODDS obtain the relief it claims should be available to it at the earlier stage of a negotiability challenge. This is a "direct injury" to DODDS. Analogy to the definition of a party "aggrieved" under the NLRA is appropriate: " '[S]tanding to appeal an administrative order as a "person aggrieved," 29 U.S.C. § 160(f), arises if

there is an adverse effect in fact, and does not … require an injury cognizable at law or equity.'" *Oil, Chemical & Atomic Workers Local 6–418 v. NLRB,* 694 F.2d 1289, 1294 (D.C.Cir.1982) (quoting *Retail Clerks Union 1059 v. NLRB,* 348 F.2d 369, 370 (D.C.Cir.1965)). In this context, as generally, the party "aggrieved" concept must be given a practical rather than hypertechnical meaning. *See, e.g., Aetna Casualty & Surety Co. v. Cunningham,* 224 F.2d 478, 480 (5th Cir.1955) (judgment winner may be sufficiently aggrieved by "quality" of decision to permit appeal). Because under the circumstances DODDS is "aggrieved" by the FLRA's decision dismissing the union's appeal, it has standing to maintain this appeal. *Accord Panama Canal Comm'n v. FLRA,* 867 F.2d 905, 908 n. 4 (5th Cir.1989).

### III

■ The Federal Services Impasse Panel becomes involved in resolving a bargaining impasse upon request by either party. 5 U.S.C. § 7119(b). Two options are available. Either a party may request the Panel to consider the matter, *id.* at § 7119(b)(1); 5 C.F.R. § 2471.1(a), or the parties may agree to a procedure for binding arbitration if the procedure is approved by the Panel. 5 U.S.C. § 7119(b)(2); 5 C.F.R. § 2471.6(b).

Because the parties here did not agree to binding arbitration, the present case falls under subsection 7119(b)(1). Under this subsection, the Panel is provided a two-step course to force resolution. First, it may seek the parties' voluntary resolution of the impasse. 5 U.S.C. § 7119(c)(5)(A); 5 C.F.R. 2471.6(a)(2). This the Panel attempted to achieve here by requiring the parties to mediate their dispute under the direction of the Federal Mediation and Conciliation Service, a step that was unsuccessful. Second, if the voluntary procedures do not resolve all differences, the Panel is authorized to end the impasse unilaterally by "tak[ing] whatever action is necessary and not inconsistent with [the Act] to resolve the impasse." 5 U.S.C. § 7119(c)(5)(B)(iii); 5 C.F.R. 2471.11(a).

Among its options mentioned in the regulations is that of requiring the parties to submit to binding arbitration. 5 C.F.R. § 2471.11(a). That was the option chosen by the Panel here.

Unlike the power of the NLRA in private labor law negotiations, then, the Panel has the power to impose contract terms on the parties. An "interest" arbitration award resolves a bargaining impasse and may impose terms; it is distinguishable from the more familiar contract or grievance arbitration award. See *DODDS v. FLRA,* 852 F.2d 779, 783 (4th Cir.1988) (making the distinction). The Panel's power to impose terms is not unlimited, however. The Panel cannot take actions—hence, cannot impose terms—"inconsistent with" the Act. 5 U.S.C. § 7119(c)(5)(B)(iii). Among these restrictions, an agency head may disapprove a collective bargaining agreement, even if panel-imposed, *DODDS,* 852 F.2d at 784, by determining it to be not "in accordance with the provisions of [the Act] [or] any other applicable law, rule, or regulation…." 5 U.S.C. § 7114(c)(2). A union in turn can challenge this decision by filing a negotiability appeal with the FLRA. *Id.* at § 7117(c).

The general contours of these procedures are not in dispute but have been affirmed by both the FLRA and the courts, including this court. *See DODDS,* 852 F.2d at 783–84; *Interpretation and Guidance,* 15 F.L. R.A. 564 (1984), *aff'd sub nom., AFGE v. FLRA,* 778 F.2d 850 (D.C.Cir.1985). The question before us turns on the permissible range of situations in which an agency head may exercise the authority to disapprove, on nonnegotiability grounds, a collective bargaining term imposed by the Panel.

The present case concerns an award by a private arbitrator. The FLRA's position is that the arbitrator had no connection to the Panel, and his interest arbitration award was therefore *not* subject to agency head review. Under this approach, while an agency may have declared that the terms imposed by the arbitrator's award were outside the duty to bargain, this declaration had no legal force and hence could not

serve as an agency allegation of nonnegotiability. Because there was no real agency allegation of nonnegotiability, the union then had no basis for its appeal to the FLRA under § 7117(c). Therefore, the FLRA argues, it was proper to dismiss the union's appeal.

While we must grant "considerable deference" to the FLRA's interpretation of the Act, *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), its reading of the Act here cannot stand. It is not based on "a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

As already mentioned, parties who seek the services of the Impasse Panel may do so in one of two ways: they may request the Panel either to consider the impasse directly or to approve a procedure for binding arbitration adopted by the parties. 5 U.S.C. §§ 7119(b)(1)–(2). It is unquestioned that the parties here did not agree to a procedure of binding arbitration and that instead the union alone sought the Panel's intervention. The FLRA, however, tries to force what then transpired into the mold of an agreement to pursue binding arbitration. If this latter course in fact had been taken, we would have to concur with the position advanced here by the FLRA. In that situation, we have said:

> Although the question is not before us, it would appear that an award in an agreed upon final and binding arbitration is not subject to agency head review under § 7114(c), and neither is the decision of the Authority upon an arbitration review subject to judicial review under § 7123 unless the order of the Authority reviewing the award involves an unfair labor practice under § 7118.

*DODDS*, 852 F.2d at 784. This policy is sensible in that a central purpose behind *voluntary* binding arbitration should be that both parties are bound by the agreement and cannot try to escape or circumvent the agreement by administrative or judicial appeal. While the present case also involved binding arbitration, it did so under quite different and *nonvoluntary* circumstances.

Reference to our prior *DODDS* decision helps to situate the issue before us. In *DODDS*, a union also requested the Impasse Panel to consider the negotiation impasse. The Panel referred the matter to its "designee," the Panel Chair, for mediation-arbitration, and all issues were subsequently resolved—most by mediation, two by submission to the Panel, and the rest by the designee's interest arbitration decision. 852 F.2d at 781 & n. 3. The two related questions in *DODDS* were, first, whether the interest arbitration decisions by the "designee" could be insulated "from agency head review under § 7114(c), when the decision of the panel itself is not so insulated," and second, whether these decisions were "an award in arbitration not reviewable by the agency head and subject only to review under § 7122." 852 F.2d at 784. We held that the decision of a "designee" was no different in this context than one by the panel itself and thus was subject to agency head review and that the designee's decision did "not amount to binding arbitration agreed upon by the parties and subject to review under § 7122." *Id.* In insisting that an agency head could review a designee's decision, we refused to allow the designee to have greater authority than that available to the Panel itself, *id.*, and we also refused the Panel "the authority to impose without consent upon an agency head final and binding arbitration not subject to agency head review . . .," *id.* at 785.

For our purposes, the most important holding in *DODDS* is the last. We should not hold an agency head who is, as here, subject to nonvoluntary binding arbitration to be unable to review the "agreement" reached by that process. We arrive at this conclusion, however, by a somewhat more extended path than did *DODDS*. Unlike the *DODDS* situation, settlement was not reached in the present case under 5 U.S.C. § 7119(c)(5)(A) but under subsection (5)(B). Under subsection (5)(A) the *DODDS* Panel delegated to its designee the authority to mediate-arbitrate the impasse, but in our case the Panel directed the parties, under

the same subsection, to resume negotiations under the guidance of the Federal Mediation and Conciliation Service. Only when this procedure failed did the Panel "take whatever action is necessary ...," *id.* at § 7119(c)(5)(B)(iii), and direct the parties to select a private arbitrator for binding arbitration. As the regulations indicate with greater precision:

> [i]f the parties do not arrive at a settlement as a result of or during actions taken under § 2471.6(a)(2) [the regulatory equivalent of 5 U.S.C. § 7119(c)(5)(A)] ..., the Panel may take whatever action is necessary and not inconsistent with [the Act] to resolve the impasse, including but not limited to ... ordering binding arbitration conducted according to whatever procedure the Panel deems suitable, and rendering a binding decision.

5 C.F.R. § 2471.11(a).

The question of whether the private interest arbitrator here is a "designee" is then not germane, as that term appears only in 5 U.S.C. § 7119(c)(5)(A) and not in subsection (5)(B). Nevertheless, the *DODDS* conclusion about the ability of an agency head to review a decision by a "designee" is pertinent, because we should hold in common with *DODDS* that the decision of a "designee"—or here, of someone who has been delegated authority by the Panel—"is no different ... than a decision

of the panel itself and thus is subject to agency head review under § 7114(c)." 852 F.2d at 784. Only when the parties voluntarily agree to binding arbitration—not when binding arbitration is imposed by the panel—should the agency head not be able to review and disapprove collective bargaining terms imposed by the arbitrator. *Accord Panama Canal Comm'n v. FLRA*, 867 F.2d 905, 908 (5th Cir.1989).

## IV

 The "final order" under review by this court on DODDS' petition under 5 U.S.C. § 7123, is the FLRA's order dismissing the union's attempted negotiability appeal. Having held that the legal premise of that order—that the agency head was without power to disapprove any provisions of the arbitrator's award under 5 U.S.C. § 7114(c)—was erroneous, we must reverse both the legally erroneous holding and the order of dismissal based upon it.

This then produces a somewhat difficult problem, not addressed by either party, of the appropriate disposition to be made by this court following upon such a decision. We have concluded that the appropriate disposition, notwithstanding some conceded procedural awkwardness, is to remand the case to the FLRA with instructions to reinstate the union's timely filed negotiability appeal from the agency's properly lodged allegations of nonnegotiability.* Upon re-

---

* The essential awkwardness is that though it might have, *see* 5 U.S.C. § 7123, the union did not cross-petition for review of the FLRA's order dismissing its attempted negotiability appeal. The usual rule, for good reason, is that a reviewing court should not grant a remedy to an aggrieved party who has not chosen to seek relief by review. *See, e.g., LeTulle v. Scofield*, 308 U.S. 415, 421, 422, 60 S.Ct. 313, 316, 317, 84 L.Ed. 355 (1940). That rule, however, is not inflexible, and rightly yields when applying it would produce "unnecessary complications and ambiguity." *In re Barnett*, 124 F.2d 1005, 1009 (2d Cir.1942). In such situations, we clearly have the power under 28 U.S.C. § 2106 to grant relief favorable to such a non-party in the interests of justice. Here, we are satisfied that departure from the rule is required to avoid ambiguity in the result that otherwise would obtain. Here DODDS sought review principally to vindicate a principle of obvious precedential importance to it, not, we assume, to gain reinstatement of an administrative appeal by its adver-

sary. (Indeed, DODDS' brief in this court sought as specific relief simply a reversal or vacation of the legal premise for the FLRA's dismissal order and contained no suggestion of the appropriate disposition of the dismissal order itself were its legal premise found erroneous.) It is a salutary rule, however, that we review judgments, not reasons, and do not properly engage in abstract vindications of principle. Having vindicated the principle here in DODDS' behalf, we think it is not unjust under the circumstances to give full effect to the logical legal consequences of the vindication, even though here that involves favoring (at least technically) an aggrieved non-party to this review proceeding and possibly actually disfavoring the petitioner in the immediate application of the principle. Put obversely, we think it would be an unacceptable, because unjust, disposition to direct, as we might, that though the union's negotiability appeal was erroneously dismissed, it should not be reinstated because of procedural

instatement of that appeal the FLRA must consider the negotiability of all issues that the agency continues to maintain are non-negotiable and whose negotiability the union continues to assert on its reinstated appeal. To the extent the FLRA determines that any of those issues are nonnegotiable, that determination must then supersede any prior FLRA ruling on the same issues in response to exceptions to the arbitrator's award under 5 U.S.C. § 7122.

*SO ORDERED.*

default, where that would presumably result in upholding by default the agency's allegation of nonnegotiability.